CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
Charlottesville
MAR 07 2014
JULIA C. DUDLEY, CLERK
BY: /s/ Linda Butt
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| SANDRA S. HUCKSTEP,<br><br>　　Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>　　Defendant. | Civil Action No. 3:13CV00014<br><br>**MEMORANDUM OPINION**<br><br>By:　Hon. Glen E. Conrad<br>　　　Chief United States District Judge |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for a period of disability and disability insurance benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423. Jurisdiction of this court is pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g). As reflected by the memoranda and argument submitted by the parties, the issues now before the court are whether the Commissioner's final decision is supported by substantial evidence, or whether there is "good cause" as to necessitate remanding the case to the Commissioner for further consideration. See 42 U.S.C. § 405(g).

The plaintiff, Sandra S. Huckstep, was born on October 28, 1957, and eventually reached the tenth grade in school. At the administrative hearing, Mrs. Huckstep testified that, while in school, she was in special education classes, and that she is now unable to read or write. (TR 15). Plaintiff has been employed as a toothbrush assembler, window/door assembler, convenience store clerk, deli worker, and receiving clerk. Apparently, she last worked on a regular and sustained basis in 2007. On May 13, 2011, Mrs. Huckstep filed an application for a period of disability and disability insurance benefits. She alleged that she became disabled for all forms of substantial gainful employment on August 31, 2007 due to bipolar disorder; borderline paranoid schizophrenia; manic

depression; and chronic obstructive pulmonary disease. Plaintiff now maintains that she has remained disabled to the present time. The record reveals that Mrs. Huckstep met the insured status requirements of the Act through the first quarter of 2011, but not thereafter. See, gen., 42 U.S.C. §§ 416(i) and 423(a). Consequently, plaintiff is entitled to disability insurance benefits only if she has established that she became disabled, within the meaning of the Act, on or before March 31, 2011. See gen., 42 U.S.C. § 423(a).

Mrs. Huckstep's claim was denied upon initial consideration and reconsideration. She then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated November 28, 2012, the Law Judge also determined that plaintiff is not disabled. The Law Judge found that, prior to the termination of insured status, Mrs. Huckstep suffered from hypercholesterolemia, chronic obstructive pulmonary disease, and affective disorder. (TR 59). However, the Law Judge ruled that, through her date last insured, Mrs. Huckstep did not suffer from a severe impairment within the meaning of 20 C.F.R. § 404.1521. (TR 60). Accordingly, the Law Judge denied plaintiff's application under the second step of the sequential disability analysis set forth under 20 C.F.R. § 1520. The Law Judge also evaluated plaintiff's claim under the fourth and fifth steps of the sequential disability analysis. Relying on testimony from a vocational expert at the administrative hearing, the Law Judge held that Mrs. Huckstep remained capable of performing several of her past relevant work roles at all relevant times on or before March 31, 2011 and, even if disabled for past relevant work, she possessed residual functional capacity to perform other work roles existing in significant number in the national economy. (TR 70-71). Ultimately, it would seem that the Law Judge ruled that Mrs. Huckstep was not disabled under steps two, four, and five of the sequential disability analysis. See 20 C.F.R. § 404.1520(c),(f), and (g). The Law Judge's opinion

was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Mrs. Huckstep has now appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff was disabled for all forms of substantial gainful employment. See 42 U.S.C. § 423(d)(2). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is unable to conclude that the Commissioner's final decision is supported by substantial evidence. The more recent medical evidence confirms that Mrs. Huckstep experiences severe emotional problems. Indeed, it seems that plaintiff was hospitalized for treatment of depression and suicidal tendencies on the very last day on which she still enjoyed insured status. Several of the mental health providers who treated plaintiff just before and in the months after her psychiatric hospitalization, have produced reports indicating that plaintiff is disabled for all forms of work activity. However, the difficulty in plaintiff's case is that her mental and physical condition prior to the termination of her insured status is less then clear. In resolving the conflicts in the medical record, and in making findings under the sequential disability analysis, the Law Judge purportedly relied on record reviews completed by state agency physicians and psychologists in connection with the earlier administrative proceedings in plaintiff's case. (TR

3

69). However, even assuming that the state agency reports from nonexamining physicians and mental health specialists should be accorded greater weight than the reports of mental health providers who saw plaintiff in the months after her psychiatric hospitalization, the court believes that the Law Judge's treatment of plaintiff's case is not consistent with those state agency reports. The court finds "good cause" for remand of plaintiff's case to the Commissioner for further development and consideration.

For purposes of application of the second step of the sequential disability analysis set forth under 20 C.F.R. § 404.1520(c), 20 C.F.R. § 404.1521(a) characterizes a severe impairment as one which significantly limits the physical or mental ability to do basic work activities. As noted above, the Law Judge relied on state agency reports generated at the initial consideration and reconsideration levels in finding no severe impairment.[1] In this respect, the Law Judge commented as follows:

> The undersigned generally adopted the DDS physical and initial mental assessments (Exs. 1 A & 3A) because they are consistent with the other credible evidence of record. Evidence which has been received into the record after the DDS determinations does not provide new or material information that would alter their findings about the severity of the claimant's impairments through her date last insured. The undersigned disagrees that medical evidence, as outlined above, shows that the claimant had a severe mental impairment prior to her date last insured. However if the claimant's mental condition could be considered severe through her date last insured for 12 consecutive months, limiting her to simple, routine work that involves working more with things rather than people and only occasional interactions with co-workers and only incidental interactions with the public, as suggested by the DDS psychologist on reconsideration, she would still not be disabled because she could still perform past relevant work and other work, according to the vocational expert.

---

[1] In passing, the court notes that such reliance is somewhat suspect, inasmuch as the state agency physicians and psychologists reviewed plaintiff's file well before the receipt of several of the reports from her treating mental health specialists following her hospitalization. Furthermore, it is well settled in the Fourth Circuit that medical reports generated after termination of insured status may be relevant in assessing the claimant's condition prior to termination of insured status. Bird v. Commissioner, 699 F.3d 337, 340 (4th Cir. 2012); Wooldridge v. Bowen, 816 F.2d 157, 160 (4th Cir. 1987); Moore v. Finch, 418 F.2d 1224, 1226 (4th Cir. 1969) On the other hand, it is fair to note that the state agency review process took place after termination of plaintiff's insured status.

(TR 69). The primary shortcoming in the Law Judge's analysis is that each of the state agency medical reviews list plaintiff's chronic obstructive pulmonary disease, chronic bronchitis, and affective disorder as severe impairments. (TR 41, 49). Without question, based on the reports on which the Law Judge accorded the greatest weight, Mr. Huckstep has established the existence of severe physical and emotional impairments. The court concludes that the Commissioner's decision to the contrary is not supported by substantial evidence.

As noted above, the Administrative Law Judge went on to consider plaintiff's case under the fourth and fifth steps of the sequential disability analysis. In finding that Mrs. Huckstep retained sufficient functional capacity to perform her past relevant work, as well as other jobs existing in the national economy, the Law Judge relied on testimony given by a vocational expert in response to hypothetical questions. The transcript of the hearing reveals the following exchange between the Law Judge and the vocational expert:

> Q [ALJ]: Okay, assume you're dealing with a person who can do simple, routine work that involves working more with things rather than with people and only occasional interactions with coworkers and only incidental interactions with the public. Could such a person do the claimant's past work as actually performed?
>
> A [VE]: I believe that the assembly work could be done under those limitations. That work is simple, routine work. It has very limited contact with co-workers and no contact with the public and the way she described the receiving work, that work would likewise be able to do it within those limitations.
>
> Q: And that's same as true as actually generally performed in the national economy?
>
> A: Yes.

> Q: Now, if we further assume the person is the same age as the claimant, has the same educational background, past work experience, could such a person do other jobs that exist in significant numbers in the region or national economy?
>
> A: In my opinion given that vocational profile and those limitations, it's my opinion that there are jobs that a person could do and I believe that, for instance, I would list these a representative, a job as a dietary aid which is light and unskilled. There's 221,000 of those jobs in the national economy. There's 5,100 in the state of Virginia. It's also my opinion that a person within those limitations could do the job of a sorter, such as a sorter in a laundry. That work is also light and unskilled, there are 240,000 of those jobs in the national economy. There are approximately 5,200 in the state of Virginia and a person within those limitations could do the job of a cleaner, particularly a light cleaner. That work is light and unskilled. There are over 850,000 of those jobs in the national economy and 2,500 in the state of Virginia and those are just representative of jobs that could be done within those limitations and all those skills and exertional levels are consistent with the DOT

(TR 31-32).

Once again, even assuming that the Law Judge properly relied on the reports from the state agency specialists in assessing plaintiff residual functional capacity, it appears to the court that the Law Judge did not include all of the limitations documented by these nonexamining specialists in formulating the hypothetical questions for the vocational expert.[2] Dr. Patricia Bruner, a psychologist, participated in the initial review of plaintiff's medical record. As to plaintiff's severe impairment on the basis of affective disorders, Dr. Bruner noted that there was insufficient evidence to assess the functional impact of these conditions. (TR 42). However, by the time of the second record review, conducted as part of the reconsideration process, another psychologist, Dr. John Kalil, specifically

---

[2] The court recognizes that it was not absolutely necessary for the Law Judge to receive input from a vocational expert in determining whether the claimant could have performed past relevant work. See 20 C.F.R. § 404.1560(b)(2). However, once the Law Judge chose to do so, and given the Law Judge's explicit reliance on the vocational expert's testimony in finding residual functional capacity for past work, the court believes that it was appropriate for the Law Judge to propound a comprehensive hypothetical question for the vocational expert's consideration.

6

stated that plaintiff's affective disorders result in moderate impairment in activities of daily living; maintaining social functioning; and maintaining concentration, persistence, or pace. (TR 49). Dr. Kalil did note that Mrs. Huckstep experiences moderate limitation in her ability to interact with the general public and with supervisors. (TR 51). However, in propounding the hypothetical questions for the vocational expert, the Law Judge only included limitations involving personal interactions. No mention was made of plaintiff's moderate impairment in terms of her ability to maintain concentration, persistence, or pace in a work setting.

In Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989), the United States Court of Appeals for the Fourth Circuit commented as follows:

> The purpose of bringing in a vocational expert is to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform. In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments. (citations omitted).

In the instant case, the court is simply unable to conclude that the assessment offered by the vocational expert, which was adopted by the Administrative Law Judge, was based on all the work-related limitations cited in the reports which were explicitly credited by the Law Judge. Accordingly, the court is unable to conclude that the Law Judge's reliance on the vocational expert's testimony in assessing plaintiff's claim at the fourth and fifth steps of the sequential disability analysis is supported by substantial evidence.

In passing, the court notes that if plaintiff's claim is properly considered at the fifth stage of the sequential disability analysis, the Law Judge has not made all the necessary findings in order to properly evaluate the case under the medical vocational guidelines. See 20 C.F.R. § 404.1569.

Despite having reached the tenth grade in special education classes, Mrs. Huckstep testified at the administrative hearing that she is unable to read or write. (TR 15). The Law Judge made no findings in this regard. Assuming that Mrs. Huckstep is illiterate, and given the Law Judge's finding of residual functional capacity for no more than light exertion, as well as plaintiff's age and lack of transferrable work skills (TR 33), Rule 202.02 of Appendix 2 to Subpart P of the Administrative Regulations Part 404 directs a determination of disabled in plaintiff's case. Upon remand, it will be necessary for the Commissioner to determine whether plaintiff is functionally illiterate.

On appeal to this court, plaintiff maintains that the existing record is sufficient to establish her disability for all forms of substantial gainful employment. The court agrees that several of the psychiatric reports generated in 2012 support a finding of total disability. However, the fact remains that the medical evidence developed prior to the termination of plaintiff's insured status is much less than conclusive. All in all, the court believes that the better course is to remand this case to the Commissioner for further administrative proceedings, so that the deficiencies and inconsistencies in the record may be properly resolved. The court notes that in cases in which the claimant has become disabled, and the date of disability onset is ambiguous, it is appropriate for the Commissioner to receive assistance from a medical advisor in order to properly assess and determine the date of disability onset. Bailey v. Chater, 68 F.3d 75 (4th Cir. 1995).

On appeal, plaintiff submitted new medical evidence directly to the court. Plaintiff seeks remand of her case to the Commissioner for consideration of the new medical evidence. Given the court's disposition as outlined above, the court finds it unnecessary to consider plaintiff's motion to remand for consideration of new medical evidence. If the Commissioner finds it necessary to conduct

supplemental administrative proceedings, Mrs. Huckstep may submit her new reports so that all the evidence of record in her case may be considered.

For the reasons stated, the court finds "good cause" for remand of this case to the Commissioner for further development and consideration. See 42 U.S.C. § 405(g). An appropriate judgment and order will be entered this day. The Clerk is directed to send certified copies of this opinion to all counsel of record.

DATED: This 6th day of March, 2014.

/s/ Glen Conrad
Chief United States District Judge